UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY BADGER,

        Petitioner,                            Case No. 2:15-cv-11934
                                                            Hon. George Caram Steeh

v.

RANDALL HAAS,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, AND DENYING A CERTIFICATE OF APPEALABILITY
AND PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed under 28 U.S.C. § 2254. Leroy Badger, ("petitioner"), was convicted in the Wayne Circuit Court after he pled guilty to second-degree murder. MICH. COMP. LAWS § 750.317. Petitioner was sentenced under terms of his plea agreement to 30 to 50 years. The Court interprets the petition to be raising the following three claims: (1) Petitioner's plea is invalid because the evidence was insufficient to sustain a conviction, (2) Petitioner was denied the effective assistance of appellate counsel, and (3) Petitioner has demonstrated cause and prejudice to excuse any procedural defaults. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

I. Background

Petitioner was originally charged with first-degree murder and with being a fourth-time habitual felony offender in connection with the stabbing death of Latisha Ratcliff on

October 4, 2011.

At the preliminary examination evidence was presented indicating that after his arrest petitioner agreed to speak with Detroit Police Officer Nancy Foster. Dkt. 6-2, at 6-8. Petitioner told Foster that he was jealous because the victim was seeing another man. Id. at 16. Petitioner told the officer that on the day of the stabbing, Ratcliff came back to her house with another man and said things that upset petitioner. Id. Petitioner chased the man away and then "tore up the house, we fought in the yard, I lost my cool. I remember reaching in my pocket and getting a pocket knife out and stabbed her three or four times." Id. at 16–17. Petitioner was provoked to stab the victim when she called him a coward. Id., at 20.

The victim's relative was an eyewitness to the stabbing. Id., at 18-19, 29-30. She testified that petitioner had the victim on the ground for about ten minutes while he was striking her, and he kept saying he was going to kill her. Id., 30. After the attack, the witness tried to assist the victim, but petitioner threatened to "put her down" too. Id., at 32. Petitioner told the witness to get away and "let the bitch die." Id., at 32.

Rather than stand trial on the original charge of first-degree murder, petitioner elected to plead guilty to the lesser offense of second-degree murder with a sentence agreement of 30 to 50 years. Dkt. 6-3, at 3-4. During the plea hearing, petitioner was informed of all the trial rights he would be waiving, and he agreed to each one. Id., at 4-7. Petitioner indicated his understanding of the plea agreement. Id., at 4, 7. Petitioner denied that any promises other then the terms of the plea agreement were made to him in order to induce his plea. Id., at 7. He also denied that anyone threatened, forced, or coerced him to enter his guilty plea. Id., at 7. Petitioner then stated under oath that on

the date in question that in a "rage of anger" he stabbed the victim "numerous times." Id., 8-9. Petitioner agreed that the autopsy report indicated that the victim was stabbed 23 times, but he did not know if that number was correct. Id., at 9-10.

Following his conviction and sentence, petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

> I. Whether Defendant–Appellant Leroy Badger should be allowed to withdraw his plea as he was provoked, and provocation negates malice and reduces a killing that would otherwise be murder to manslaughter, and therefore he is actually not guilty of the crime with which he was charged, as well as the crime to which he entered his plea?
>
> II. Whether Defendant–Appellant Leroy Badger should be allowed to withdraw his plea as he was coerced by counsel into entering the plea, rendering his plea involuntary, and depriving him of effective assistance of counsel?
>
> III. Whether Defendant–Appellant Leroy Badger should be allowed to withdraw his plea as his plea bargain was illusory?

The Michigan Court of Appeals denied the delayed application "for lack of merit in the grounds presented." People v. Badger, No. 316303 (Mich. Ct. App. June 24, 2013). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." People v. Badger, 839 N.W.2d 462 (Mich. 2013) (unpublished table decision).

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising what now form his three habeas claims. The trial court denied the motion for relief from judgment on the merits, and also held that petitioner was not entitled to relief on his

first claim because he had not demonstrated "good cause" and "actual prejudice" for his failure to raise the claim on direct appeal as required by Michigan Court Rule 6.508(D)(3). Dkt. 6-8, at 4.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, appealing the trial court's decision. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish "good cause" for failing to raise his issues in his previous appeal under Michigan Court Rule 6.508(D)(3)(a). People v. Badger, No. 321876 (Mich. Ct. App. Aug. 7, 2014). The court also held that Badger's ineffective-assistance claim was without merit. Id. Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court denied relief under Michigan Court Rule 6.508(D). People v. Badger, 861 N.W.2d 901 (Mich. 2015) (unpublished table decision).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor,

529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted because the errors were not preserved on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is

independent of the federal question and is adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See Trest v. Cain, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F. 3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims.

B. Validity of Guilty Plea

Petitioner's first claim challenges the validity of his guilty plea. He asserts that his plea was entered "under deep grief, desperation, shame, remorse, and a misunderstanding of the law." Dkt. 1, at 15. He alleges that the victim called him on the date of the incident and falsely claimed that someone was shooting at her house. Id. He states that this is the reason he went to her house, and that once he arrived, he was confronted by a "provocative scene and insinuations and threats [that] aroused [his] anger to uncontrollable rage." Id. Petitioner also attacks the police investigation, asserting that police reports indicate there were 3 or 4 stab wounds and not the 23 wounds found by the medical examiner. Finally, petitioner notes that the police did not investigate the phones he had in his possession when he was arrested which would

have corroborated his claim that the victim called him on the night in question. Id., at 21. He asserts that there was insufficient evidence to sustain his convictions.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." Brady v. United States, 397 U.S. 742, 749 (1970). In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent. Brady, 397 U.S. at 756, The defendant must have notice of the nature of the charges against him. Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. Brady, 397 U.S. at 750. The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. Brady, 397 U.S. at 755. Finally, the defendant must have available the advice of competent counsel. Brady, 397 U.S. at 756.

The transcript of the plea hearing belies petitioner's claims. The trial court explained the charges to petitioner, and he indicated his understanding. He indicated that he was pleading guilty of his own free will, and he never indicated that his plea was the result of "desperation" or a "misunderstanding of the law." Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of

correctness attaches to the state court findings of fact and to the judgment itself. Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993). A satisfactory state-court transcript, such as the one here, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. Id. at 328; see Parke v. Raley, 506 U.S. 20 (1992).

There exists nothing in the record that supports petitioner's claim that his plea was anything other than the voluntary and intelligent choice among the alternative courses of action open to him. Finally, to the extent petitioner attacks the sufficiency of the evidence supporting his conviction, such a claim was waived by his validly entered guilty plea. United States v. Martin, 526 F.3d 926, 931–33 (6th Cir. 2008). Petitioner has failed to show that the state court decisions resulted in any decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, the Court finds that petitioner's first claim is without merit.

C. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel was ineffective for failing to raise the above claim on direct appeal. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

-8-

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." Id. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." See Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. See Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for

relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. As indicated above, petitioner's claim challenging the validity of his guilty plea is without merit. Accordingly, petitioner's second claim is also without merit.

D. Cause and Prejudice

Because the Court assessed each of Petitioner's claims on the merits, Petitioner's claim that he can demonstrate cause and prejudice to excuse any procedural bar to review of the merits of his claims is moot.

V. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability by making a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not demonstrated entitlement to habeas relief with respect to any of his claims. The Court will therefore deny a certificate of appealability with respect to all of Petitioner's claims. The Court will also deny permission to appeal this decision in forma pauperis because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

VI. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: July 12, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 12, 2016, by electronic and/or ordinary mail and also on Leroy Badger #226217, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

s/Barbara Radke
Deputy Clerk